IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MIRCEA TONEA,                    :
                                 :
       Plaintiff,                :
                                 :          CIVIL ACTION
v.                               :
                                 :          NO. 1:13-CV-1435-WSD-ECS
BANK OF AMERICA, N.A.,           :
                                 :
       Defendant.                :
                                 :

**ORDER, FINAL REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On March 25, 2013, Plaintiff Mircea Tonea ("Plaintiff"), proceeding pro se, filed a civil action in the Superior Court of Gwinnett County, Georgia naming Bank of America N.A. ("BANA" or "Defendant") as the defendant. [Doc. 1-1]. The suit seeks to halt the impending non-judicial foreclosure sale of real property located at 1845 Oak Wind Lane, Buford, Georgia 30519 ("the Oak Wind Lane Property"). [Doc 1-1 at 6]. On April 29, 2013, Defendant BANA removed the action to this court. [Doc. 1]. On May 6, 2013, Defendant filed a motion to dismiss, [Doc. 3], and a motion to stay pretrial deadlines and discovery, [Doc. 4]. Plaintiff then filed a motion to remand the case to state court, [Doc. 5], on May 14, 2013. Defendant responded in opposition to Plaintiff's motion to remand on May 31, 2013. [Doc. 6]. Finally, on June 14, 2013, Plaintiff filed an "Addendum to the Complaint," [Doc. 7], which Defendant now moves to strike, [Doc. 8]. Plaintiff filed no response in opposition

to any of Defendant's three motions, [Docs. 3, 4, 8]. Accordingly, those motions are deemed unopposed. See LR 7.1B, NDGa. This matter is now before the Court on all four pending motions, [Docs. 3, 4, 5, 8]. For the reasons discussed below, Defendant's motion to strike Plaintiff's addendum, [Doc. 8], and Defendant's motion to stay pretrial deadlines and discovery, [Doc. 4], are both **GRANTED**. The undersigned **RECOMMENDS** that Plaintiff's motion to remand, [Doc. 5], be **DENIED.** Accordingly, the undersigned **FURTHER RECOMMENDS** that Defendant's motion to dismiss, [Doc. 3], be **GRANTED** for failing to state a claim upon which relief can be granted.

## I.
## Background

Upon review of the complaint and other papers filed by Plaintiff in the state and district courts, it appears that Plaintiff's civil action is yet another in a series of actions filed in state court and then removed by Defendants to this Court in which a pro se plaintiff, facing the loss of a parcel of real property for failing to pay the mortgage, files documents obtained from the Internet in a flawed attempt to forestall or set aside the foreclosure sale of the property. See, e.g., Alexander v. Bank of America, No. 1:13-CV-2072-SCJ-ECS, Doc. 1 (N.D. Ga. June 20, 2013).

Although Plaintiff's complaint is not even remotely a model of clarity, it appears that his claims arise in connection with a

2

mortgage loan transaction between Plaintiff, Defendant, and several non-parties, evidenced by a promissory note and security deed relating to the Oak Wind Lane Property. [Docs. 1-2, 1-3]. In the complaint, Plaintiff apparently seeks rescission of the $189,000.00 loan, compensatory damages in the amount of $74,950.00, unspecified punitive damages, attorney's fees and costs, and, perhaps, injunctive relief against an impending foreclosure on the property. See generally [Doc. 1-1].

Plaintiff's complaint is not artfully drawn and suffers from multiple infirmities. From the few statements of pure fact alleged by Plaintiff, the Court gleans that he executed a promissory note ("the Note") in favor of non-party Home Funds Direct ("HFD"), and that he executed a security deed ("the Security Deed") naming Mortgage Electronic Registration Systems, Inc. ("MERS"), "solely as a nominee for [HFD] and [HFD's] successors and assigns." [Doc. 1-2 at 2]. It appears that MERS assigned the Security Deed to BANA, but Plaintiff's complaint does not clearly allege this fact, and Defendant did not provide evidence supporting any assignment of the Security Deed.

## A.   Defendant's Motion to Strike

In the motion to strike, Defendant argues that Plaintiff's "Addendum to the Complaint" should be stricken from the record. [Doc. 8]. Defendant submits that Plaintiff filed his addendum after

3

the time to amend as a matter of right and without leave of Court. [Doc. 8-1 at 1]. As noted above, Defendant's motion to strike is unopposed.

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one (21) days after service of the pleading, or, if the pleading requires a response, within twenty-one (21) days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f). Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.

Here, Defendant filed its motion to dismiss under Rule 12(b) on May 6, 2013. See [Doc. 3]. Therefore, when Plaintiff filed his addendum on June 14, 2013, he did so outside of the 21-day period for amending as a matter of right, which ended on May 27, and he did so without obtaining consent from Defendant or seeking leave of Court. Accordingly, the undersigned **GRANTS** Defendant's motion, [Doc. 8], and **DIRECTS** the Clerk to **STRIKE** Plaintiff's "Addendum to the Complaint," [Doc. 7].

**B.    Plaintiff's Motion to Remand**

On May 14, 2013, without responding to either of Defendant's May 6 motions — the motion to dismiss or the motion stay pretrial deadlines — Plaintiff filed a motion to remand the case to state

4

court, using what appears to be another form document downloaded from the Internet. The Court is familiar with this document, as it has been used, virtually verbatim, by various plaintiffs in this district in other cases. See [Doc. 5]; see also, Alexander, No. 1:13-CV-2072-SCJ-ECS, Doc. 5. Plaintiff asserts that this action must be remanded to the Superior Court of Gwinnett County, Georgia, because the District Court lacks subject matter jurisdiction. [Id.]. Plaintiff argues that removal by Defendant was improper because his complaint does not allege either of the statutory bases for removal: federal question jurisdiction and diversity jurisdiction. See [Doc. 5]; 28 U.S.C. §§ 1331, 1332, 1441. Defendant counters that removal was proper on the basis of both federal question and diversity jurisdiction and, therefore, the motion to remand should be denied. See [Doc. 6].

1.   **Removal Requirements**

Twenty-eight U.S.C. § 1441(a) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject

5

matter jurisdiction, the case shall be remanded." <u>Id</u>. § 1447(c). In removal cases, the party seeking removal has the burden to demonstrate that federal jurisdiction exists, <u>Kirkland v. Midland Mortg. Co.</u>, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001), and "uncertainties are resolved in favor of remand." <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994). "A defendant may remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally." <u>Kemp v. Int'l Bus. Machs. Corp.</u>, 109 F.3d 708, 711-12 (11th Cir. 1997) (citing 28 U.S.C. § 1441). A case may be brought originally in federal district court only if there is diversity jurisdiction or federal question jurisdiction. <u>See</u> 28 U.S.C. §§ 1331, 1332.

**2.   Federal Question Jurisdiction**

Federal question jurisdiction exists if the case arises under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." <u>Caterpillar, Inc . v. Williams</u>, 482 U.S.

6

386, 392 (1987)(citations omitted). "The well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as to their removal jurisdiction." <u>Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 10-11 (1983).

In his motion to remand, Plaintiff states, "It is a FACT that there are NO federal questions in Plaintiff's complaint — none of the causes of action rely on the interpretation of federal law." [Doc. 5 at 2]. And Plaintiff asserts that his complaint alleges only "common law fraud, misrepresentation, fraudulent conversion, wrongful pre-foreclosure, [and] dual-tracking of [the Oak Wind Lane Property]." [Doc. 5 at 6]. In his "Verified Complaint," [Doc. 1-1], though, Plaintiff alleges not one specific cause of action; but he does reference the United States Constitution and several federal statutes to establish his rights, including the Fair Debt Collection Practices Act ("FDCPA"), [<u>id.</u> at "Fact" 2, 3, 4, 24], the Real Estate Settlement Procedures Act ("RESPA"), [<u>id.</u> at "Fact" 3], and the Truth-in-Lending Act ("TILA"), [<u>id.</u> at "Fact" 68]. Therefore, questions of federal law are present on the face of Plaintiff's complaint, which satisfies the requirements of §§ 1331, 1441 and provides the Court with original jurisdiction.

**3.   Diversity Jurisdiction**

Even if the Court lacked federal question jurisdiction in this

7

case, the Court also maintains original jurisdiction based on diversity of citizenship. See 28 U.S.C. § 1332. Diversity jurisdiction exists if there is "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000." Davis v. Cannon Chevrolet-Olds, Inc., 182 F.3d 792, 794 (11th Cir. 1999); see also 28 U.S.C. § 1332(a). Complete diversity "requires that no defendant in a diversity action be a citizen of the same state as any plaintiff." MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239 (11th Cir. 2005). Diversity of citizenship of the parties is not challenged in Plaintiff's motion to remand, and Defendant sufficiently alleges, in the notice of removal, that the parties are diverse, satisfying the first requirement for diversity jurisdiction. See [Doc. 1]. Plaintiff asserts, however, that the amount in controversy does not exceed the $75,000 threshold to satisfy the statute because he seeks $74,950.00 in his complaint. [Doc. 5 at 12].

In terms of the amount in controversy, "removal ... is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). To justify dismissal of a diversity jurisdiction case for failure to meet the amount in controversy requirement, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional

8

amount." <u>Federated Mut. Ins. Co. v. McKinnon Motors, LLC</u>, 329 F.3d 805, 807 (11th Cir. 2003) (citing <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938)). Punitive damages must be considered in determining the amount in controversy, "unless it is apparent to a legal certainty that such cannot be recovered." <u>Holley Equipment Co. v. Credit Alliance Corp.</u>, 821 F.2d 1531, 1535 (11th Cir. 1987); <u>see also</u> <u>Allen v. Toyota Motor Sales, U.S.A., Inc.</u>, 155 F. App'x 480, 482 (11th Cir. 2005) (finding the amount in controversy requirement satisfied because it set out a specified amount of damages — $66,678.65 — plus additional unspecified damages sufficient to show "that the amount in controversy might well exceed the jurisdictional amount.")

As noted in Defendant's notice of removal and response to Plaintiff's motion to remand, Plaintiff seeks $74,950.00 in compensatory damages, [Doc. 1-1 at "Fact" 51], rescission of a loan in the amount of $189,000.00, [<u>id.</u> at p. 51], punitive damages [<u>id.</u> at "Fact" 61], and attorney's fees, [<u>id.</u>]. On the face of the complaint, it is apparent that the amount in controversy will exceed the jurisdictional requirement, and therefore, this second requirement is satisfied and diversity jurisdiction exists in this case.

Accordingly, having found that the Court does not lack subject matter jurisdiction, and Defendant's removal of the case to federal

9

court was therefore proper, the undersigned **RECOMMENDS** that Defendant's motion to remand, [Doc. 5], be **DENIED**.

## C.   Defendant's Motion to Dismiss

Defendant BANA moves to dismiss Plaintiff's complaint for failing to state a claim upon which relief can be granted. [Doc. 3]. As noted above, Defendant's motion to dismiss is unopposed. Because Plaintiff does not oppose the motion to dismiss, the undersigned will accept Defendant's characterization of Plaintiff's complaint for the purposes of this motion. See Grant v. BAC Home Loans Servicing, LP, No. 1:11-CV-02253-RWS, 2012 WL 887590, at *1 (N.D. Ga. Mar. 15, 2012).

Although Plaintiff's claims are not clear from the complaint, Defendant identifies five possible theories that may be alleged in the complaint: (1) that BANA lacks standing to foreclose on the Oak Wind Lane Property if it does not possess the original promissory note; (2) that MERS does not have the authority to transfer the power of sale contained in the security deed and that securitization of the loan was improper; (3) that HFD did not lend Plaintiff money, therefore no debt existed and, thus, no default occurred; (4) that the non-judicial foreclosure violates the First, Fifth, Seventh, and Ninth Amendments to the United States Constitution; and (5) that Defendant violated RESPA, the FDCPA, the Home Affordable Modification Program ("HAMP"), and TILA. [Doc. 3-1 at 4]. Defendant

10

maintains that each of these potential claims are meritless and should be dismissed. [Id.]. Additionally, Defendant asserts that Plaintiff's complaint constitutes an impermissible shotgun pleading. [Id.].

### 1.   Shotgun Pleading

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). In this regard, Federal Rule 10(b) requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A district court has a "supervisory obligation," under Rule 12(e), sua sponte to direct a plaintiff to re-plead her complaint "when a shotgun complaint fails to link adequately a cause of action to its factual predicates." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006); see also Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008).

While there is no precise definition of a "shotgun pleading," the Eleventh Circuit has observed that "[w]here . . . each count [of

11

a complaint] incorporates every antecedent allegation by reference, the defendant's affirmative defenses are not likely to respond to a particular cause of action but, instead, to the complaint as a whole. Such disjointed pleadings make it difficult, if not impossible to set the boundaries for discovery." <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1129 (11th Cir. 2001). Similarly, shotgun pleadings are "framed in complete disregard of the principle that separate, discrete causes of action should be pled in separate counts." <u>Cesnik v. Edgewood Baptist Church</u>, 88 F.3d 902, 905 (11th Cir. 1996).

Plaintiff's form complaint has most all of the telltale characteristics of an impermissible shotgun pleading. The complaint does not clearly allege even a single "separate, discrete" cause of action for which Defendant may be liable. <u>Cesnik</u>, 88 F.3d at 905; <u>see generally</u> [Doc. 1-1]. Instead, the complaint contains seventy-two (72) "Fact" paragraphs alleged in no particularly apparent order. The few facts that are alleged are not connected in any way to the generalized allegations in the complaint, and the complaint does not incorporate by reference any prior factual or legal allegation to link the two together. Thus, it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." <u>Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366 (11th Cir. 1996).

Accordingly, the court **RECOMMENDS** that Defendant's motion to

12

dismiss the complaint be **GRANTED** pursuant to Fed. R. Civ. P. 8 and 12(b)(6) for failure to comply with the rules of notice pleading. But even if the complaint complied with the rules of notice pleading, the Court finds that the claims alleged are subject to dismissal as a matter of law, as discussed below.

**2.    Standard of Review for a Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006) (citation omitted); Fuller v. Johannessen, 76 F.3d 347, 349-350 (11th Cir. 1996). Although the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

Since Twombly, the Supreme Court has clarified that Rule 8 of

13

the Federal Rules of Civil Procedure requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Therefore, the plaintiff must plead "factual content that [would] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

### 3.  Plaintiff's "Produce the Note" Claim

Plaintiff's complaint appears to allege that Defendant does not have authority to foreclose on the Oak Wind Lane Property because BANA cannot produce an original promissory note. <u>See</u> [Doc. 1-1 at "Fact" 16-17]. Plaintiff asserts that "[i]t is a FACT that no party ... [can] claim '**perfected security interest**' without production of the Original Note with the 'wet ink' signatures of both parties." [<u>Id.</u> at "Fact" 16 (emphasis in original)]. Contrary to Plaintiff's statement of "FACT," however, under Georgia law, possession of the promissory note is not required for the non-judicial foreclosure sale of a security deed. <u>See</u> <u>You v. JP Morgan Chase Bank</u>, 743 S.E. 2d 428, 433 (Ga. 2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."); <u>Harris v. Chase Home Fin., LLC</u>, 524 F. App'x 590, 592 (11th Cir. 2013) (citing <u>You</u>); <u>Minnifield v.</u>

14

Johnson & Freedman II, LLC, 522 F. App'x 782, 784 (11th Cir. 2013) (same). "Transfers of deeds to secure debt ... shall be sufficient to transfer the property therein described and the indebtedness therein secured, *whether the indebtedness is evidenced by a note or other instrument*...." O.C.G.A. § 44-14-64(b) (emphasis added). "This Code section further supports the conclusion that the deed holder possesses full authority to exercise the power of sale upon the debtor's default, regardless of its status with respect to the note." You, 743 S.E. 2d at 433 (citing O.C.G.A. § 44-14-64(b)). Therefore, to the extent that Plaintiff is alleging that BANA failed to produce the original promissory note, Plaintiff has failed to state a claim upon which relief can be granted.

**4.    Plaintiff's Claim that the Loan was Improperly Securitized and that MERS Lacks Authority to Assign the Security Deed**

In his complaint, Plaintiff asserts that "[i]t is a FACT that Mortgage Electronic Registration Systems Inc (MERS) is NOT an entity with any authority to transfer anything," [Doc. 1-1 at "Fact" 6]. See also [id. at "Fact" 43]. Defendant responds, however, that MERS is the Grantee under the Security Deed, which Plaintiff expressly agreed to in executing the Security Deed, see [Doc. 3-2 at 2], and asserts, further, that the Georgia courts recognize MERS's authority as a nominee. [Doc. 3-1 at 11-12 (citing Brown v. Fed. Nat'l Mortg. Ass'n, 2011 U.S. Dist. LEXIS 31478 (N.D. Ga. Feb. 28, 2011) adopted

15

by 2011 U.S. Dist LEXIS 31471 (N.D. Ga. Mar. 24, 2011))]. In response to Plaintiff's assertion that he was not informed that "once the Plaintiff ... signed the Security Deed ... [it] was immediately sold as an INVESTMENT SECURITY to one of any number of investors [and then] bundled and SOLD to a buyer ...," Defendant points the Court to this district's previous dismissal of such an allegation:

> it could well be that Plaintiff's mortgage was pooled with other loans into a securitized trust that then issued bonds to investors. However, that fact would not have any real effect on Plaintiff's rights with respect to his loan, and it certainly would not absolve Plaintiff from having to make payments on his loan or somehow shield Plaintiff's property from foreclosure. The simple fact of the matter is that Plaintiff borrowed money, and he is legally obligated to pay that money back.

Merkerson v. Bank of Am., No. 1:10-CV-0050-WBH, Doc. 20 at 4 (N.D. Ga. Apr. 21, 2010). The undersigned agrees with Defendant, and for the reasons discussed above, any claim that Plaintiff may be attempting to assert on the theory that the loan was improperly securitized or transferred to or from MERS must fail.

> **5.    Plaintiff's Claim that No Debt Exists**

Plaintiff alleges that he was not loaned any money, so he owes no debt, and, therefore, he has not defaulted on the mortgage that Defendant seeks to repay with the proceeds from a foreclosure sale:

> Plaintiff has not received a validation of the alleged debt accompanied by an Affidavit from the Alleged Lender .... Plaintiff disputes this debt .... **Plaintiff denies**

16

> **this debt and the default because there is no debt and
> therefore there is no default.** Therefore, **any foreclosure
> proceedings, MUST BE POSTPONED.**

[Doc. 1-1 at "Fact" 3 (emphasis in original)]. In the motion to

dismiss, however, Defendant shows that Plaintiff acknowledged the

debt when he executed the Note and Security Deed. [Doc. 3-1 at 14-

15]. In the Security Deed, entered into the record in state court

by Plaintiff himself, attached to his complaint, Mihaela Tonea and

Mircea Florin Tonea are identified as the "Borrower" granting the

security interest. See [Docs. 1-2 at 2, 3-2 at 2]. The Security

Deed, signed by both Mihaela and Mircea Tonea, states that "Borrower

has promised to pay this debt...," [Docs. 1-2 at 3, 3-2 at 3], and

that "[t]his Security Instrument secures to Lender: (i) the

repayment of the Loan ...," [Docs. 1-2 at 4, 3-2 at 4]. Plaintiff's

own filings establish that the debt exists and that he is now

legally obligated to repay the loan by the means identified in the

executed Security Deed. Accordingly, any claim Plaintiff may have

alleged on the basis that there is no debt must be dismissed.

To the extent that Plaintiff may be attempting to argue the so-

called "vapor money" theory as grounds for exoneration from his

mortgage debt, such an argument cannot succeed. A claim based on the

"vapor money" theory typically relies upon the convoluted and

nonsensical argument that a plaintiff does not owe the money

advanced by the lender on his loan because the indebtedness was not

funded by the lender with actual money. See <u>Thomas v. Countrywide</u> <u>Home Loans</u>, No. 2:09-CV-82, 2010 WL 1328644, at *2 (N.D. Ga. Mar. 29, 2010), for an attempted explanation of the "vapor money" theory. Here, Plaintiff alleges that "the funds for the loan were created by Plaintiff's signature" on the Note, [Doc. 1-1 at "Fact" 27], and that "the bank creates new money every time that banks grant loans, that the promissory note is money, and that the bank records a loan from you to the bank, resulting in a new bank liability," [<u>id.</u> at "Fact" 46]. Courts in this district have routinely rejected the "vapor money" theory as frivolous. <u>See</u> <u>Thomas</u>, 2010 WL 1328644, at *2 (collecting cases); <u>see</u> <u>also</u>, <u>Montoya v. Branch Banking & Trust</u> <u>Co.</u>, No. 1:11-CV-1869, 2012 WL 826993, at * 8 (N.D. Ga. Mar. 9, 2012) (dismissing plaintiff's "frivolous" claims based on plaintiff's "vapor money" allegations); <u>Yeboah v. Bank of New York</u> <u>Mellon</u>, No. 1:12-CV-02139, 2012 WL 4759246, at *5 (N.D. Ga. Aug. 30, 2012) (same); <u>Buckley v. Bayrock Mortg. Corp.</u>, No. 1:09-CV-1387-TWT, 2010 WL 476673, at *7-9 (N.D. Ga. Feb. 5, 2010) (same). Therefore, any claim that Plaintiff alleges based on the "vapor money" theory must be dismissed.

**6.   Plaintiff's Constitutional Claims**

Plaintiff's form complaint also alleges that non-judicial foreclosure violates the United States Constitution:

It is a FACT that **FIRST**, "Dispossess Proceedings" [sic]

18

> are summary judgments which violate the First, Fifth,
> Seventh and Ninth Amendments to the 1776 U.S.
> Constitution. **SECOND**, Sale under power/power of sale
> requires party claiming authority prove 'secured party
> status'. [sic] **THIRD**, the Power of sale authority
> violates Article I Section 10 Clause 1 of the 1776 U.S.
> Constitution. **FOURTH**, the Writ of Possession executed
> without a lawful judgment by an authentic decision of a
> court of justice having been litigated and submitted to
> its determination is void. **FIFTH**, the Dispossess
> Proceeding, the sale under power, and the Writ of
> Possession each violate the First, Fifth, Seventh and
> Ninth Amendments.

[Doc. 1-1 at "Fact" 35 (emphasis in original)]. Defendant argues

that a non-judicial foreclosure does not constitute state action,

and therefore, Plaintiff may not raise constitutional claims in

connection with the foreclosure sale. [Doc. 3-1 at 15].

An allegation of state action is required to state a viable

claim of violation of constitutional rights. <u>See</u> 42 U.S.C. § 1983.

The Eleventh Circuit has held that non-judicial foreclosure sales

do not involve state action. <u>Crooked Creek Properties, Inc. v.</u>

<u>Hutchinson</u>, 432 F. App'x 948, 949-50 (11th Cir. 2011) (citing

<u>Roberts v. Cameron-Brown Co.</u>, 556 F.2d 356, 358-60 (5th Cir. 1977)

(finding no state action nexus in private foreclosure sale)).[1]

Additionally, "[p]rivate banks ... are not 'state actors.'"

<u>Hennington v. Bank of Am.</u>, No. 1:10-CV-1350-WSD-JFK, 2010 WL

---

[1]     Decisions of the Fifth Circuit rendered on or before
September 30, 1981 are binding precedent in the Eleventh Circuit.
<u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc).

5860296, at *6 (N.D. Ga. Dec. 21, 2010) report and recommendation adopted, No. 1:10-CV-1350-WSD, 2011 WL 705173 (N.D. Ga. Feb. 18, 2011). Therefore, setting aside the conclusory nature of these allegations, Plaintiff cannot maintain a constitutional claim against BANA related to the foreclosure of his property due to the lack of any allegation of state action.

   **7.   Plaintiff's Federal Law Claims**

      **a.   Real Estate Settlement Procedures Act**

   In denying that any debt existed, Plaintiff states, in his complaint, that "[i]t is a FACT that Plaintiff mailed a [Qualified Written Request ("QWR")] and FDCPA inquiry for verification to the Defendant/Respondent .... Plaintiff has not received ... complete written responses to each of the queries." [Doc. 1-1 at "Fact" 3]. Plaintiff appears to allege these facts in support of both his potential RESPA and FDCPA claims. Defendant argues that the RESPA claim fails because the complaint does not sufficiently allege the date and contents of the QWR or that Defendant's alleged violation caused any damages. [Doc. 3-1 at 16-17].

   Plaintiff's complaint fails to state a claim that BANA violated RESPA, 12 U.S.C. § 2605(e), by not responding to his QWRs. In order to state a claim under RESPA for failure to respond to a QWR, a plaintiff must allege facts to show that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3)

the defendant failed to adequately respond within the statutory period, and (4) the plaintiff is entitled to actual or statutory damages. Arroyo v. Bank of Am., N.A., No. 1:13-CV-1767-RWS, 2013 WL 3785623, at *3 (N.D. Ga. July 18, 2913); Jones v. Vericrest Fin., Inc., No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *15 (N.D. Ga. Dec. 7, 2011), adopted, 2012 WL 113556 (Jan. 12, 2012). RESPA defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," which: (1) requests information relating to the servicing of a loan; (2) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (3) states the reasons for the borrower's belief that the account is in error, or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(A)-(B).

Here, in conclusory fashion, Plaintiff alleges that he "mailed a QWR," to which BANA responded with incomplete information. [Doc. 1-1 at "Fact" 3]. But Plaintiff did not provide any allegations about the content of his mailing; he did not attach copies of the mailing to the complaint; and he did not allege how BANA's response was incomplete. With no facts to show that his mailing met the statutory requirements of a QWR, or that BANA's response failed to discharge its duties under RESPA, Plaintiff's claim based upon this alleged correspondence offers only "labels and conclusions," which

21

is not enough to survive a motion to dismiss. <u>See</u> <u>Twombly</u>, 550 U.S. at 555.

###    b.    Fair Debt Collection Practices Act

Plaintiff also cites the FDCPA in his "Fact" allegations, apparently in connection with the alleged QWRs he mailed to Defendant. <u>See</u> [Doc. 1-1 at "Fact" 2, 3, 4]. Defendant submits, however, that Plaintiff's claim must fail because BANA is not a "debt collector" and a foreclosure notice is not "debt collection activity" under the FDCPA. [Doc. 3-1 at 18].

"[T]o state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." <u>Reese v. Ellis</u>, 678 F.3d 1211, 1216 (11th Cir. 2012). Plaintiff has not complied with either of these foundational FDCPA requirements. Plaintiff does not allege any facts showing that Defendant attempted to collect a debt under the Act. Nor does he allege facts showing how Defendant meets the statutory definition of a "debt collector." As Defendant notes, in fact, the term "debt collector" under the FDCPA "does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." [Doc. 3-1 at 18 (citing <u>Lacosta v. McCalla Raymer, LLC</u>, No. 1:10-CV-1171-RWS, 2011 WL 166902, at *6 (N.D. Ga. Jan. 18, 2011))].

22

Furthermore, it is well established that a mortgage foreclosure action is not debt collection activity under the FDCPA, but instead, is considered "enforcement of a security interest" under 15 U.S.C. § 1692f(6). See e.g., Warren v. Countrywide Home Loans, Inc., 2009 WL 2477764 (11th Cir. 2009). Therefore, Plaintiff's complaint fails to allege "more than labels and conclusions," necessary to state a claim for relief under the FDCPA. Twombly, 550 U.S. at 555.

### c.   The Home Affordable Modification Program

Plaintiff asserts that he

has applied for a mortgage loan modification and Defendant/Respondent BAC [sic] has initiated foreclosure proceedings against Plaintiff during the application process. Therefore, Plaintiff has the right to contest any seizure of Plaintiff's home in court by suing the lender for violating Plaintiff's rights to fair loan modification under [the Home Affordable Modification Program ("HAMP")].

[Doc. 1-1 at "Fact" 63]. As Defendant correctly notes, however, no private right of action exists under HAMP. Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2011); Nelson v. Bank of Am., N.A., 446 F. App'x 158, 159 (11th Cir. 2011). Accordingly, any attempt by Plaintiff to "su[e] the lender" pursuant to HAMP is due to be dismissed.[2]

---

[2]    Plaintiff appears to assert that Defendant violated, in some unspecified way, the Consent Cease and Desist Order executed by BANA and the Comptroller of the Currency of the United States of America on March 29, 2011, after the Office of the Comptroller of the Currency ("OCC") discovered "deficiencies and unsafe or unsound

AO 72A
(Rev.8/82)

    **d.   Truth-In-Lending Act**

Finally, Plaintiff appears to assert that Defendant violated TILA by failing to disclose to him that the debt had been "paid down" under the terms of the loan. [Doc. 1-1 at "Fact" 68]. Although Plaintiff does not cite any specific TILA violation, Defendant surmises, without objection from Plaintiff, that he asserts a violation of section 1639f. [Doc. 3-1 at 20]. This provision requires a servicer to promptly credit a payment to a consumer's loan account. <u>See</u> 15 U.S.C. § 1639f(a). Defendant argues, however, that Plaintiff has failed to allege any failure to receive prompt credits for any payment and so fails to state a claim under TILA. [Doc. 3-1 at 20]. The undersigned agrees. Plaintiff has failed to allege any fact in connection with a TILA claim, and therefore, to the extent that Plaintiff is asserting a claim for a TILA violation, it should be dismissed for failing to satisfy the <u>Twombly</u> pleading

---

practices" within BANA's residential real estate mortgage foreclosure processes. <u>See</u> [Doc. 1-1 at "Fact" 65]; Consent Order, In the Matter of Bank of America, N.A., Case No. AA-EC-11-12, Art. XIII, § (10) (Apr. 13, 2011), available at http://www.occ.gov/news-issuances/newsreleases/2011/nr-occ-2011-4 7b.pdf. The short answer to this claim is that Plaintiff has no private right of action under the Consent Decree. The Consent Decree provides as follows: "Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." Consent Order, Art. XIII, § 10.

standard. 550 U.S. at 555.

**III.**
**Conclusion**

For the foregoing reasons, Defendant's motion to stay pretrial deadlines and discovery, [Doc. 4], is **GRANTED**. **IT IS RECOMMENDED** that Plaintiff's motion to remand, [Doc. 5], be **DENIED**. The undersigned **GRANTS** Defendant's motion to strike Plaintiff's addendum, [Doc. 8], and **DIRECTS** the Clerk to **STRIKE** Plaintiff's "Addendum to the Complaint," [Doc. 7]. The undersigned **FURTHER RECOMMENDS** that Defendant's motion to dismiss, [Doc. 3], be **GRANTED** and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned magistrate judge.

**SO REPORTED AND RECOMMENDED**, this 18th day of December, 2013.


_s/ E. Clayton Scofield_
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

25